### GENERAL ELECTRIC CO. v. SMITH.

(Circuit Court, D. Massachusetts. June 11, 1909.)

#### No. 424.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ELECTRIC SAFETY-FUSE.
   The Thalacker patent No. 502,541, for an electric safety-fuse, consisting of a combination of a main safety-fuse, a box or case inclosing the same, and a small auxiliary fuse, not fully inclosed, which blows at the same time as the main fuse, and the purpose of which is to indicate the blowing of the main fuse, was not anticipated and discloses invention, but is not infringed by a device which is without the combination and structurally different, except that it has an auxiliary fuse as an indicator.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

William K. Richardson and A. D. Salinger, for complainant.
John P. Bartlett and Henry B. Brownell, for defendant.

BROWN, District Judge. This suit is for infringement of letters patent No. 502,541 to Carl Thalacker, dated August 1, 1893, for improvements in electric safety-fuses. Claims 1, 2, and 4 are in issue:

"Claim 1. In an electric safety-fuse, the combination of a main safety-fuse, an auxiliary safety-fuse, and a box or casing completely enveloping the main fuse, but so constructed as to permit the condition of the auxiliary fuse to be seen.

"(2) In an electric safety-fuse, the combination of a main fuse, an auxiliary fuse, and a casing completely enveloping the main fuse, but only partially enveloping the auxiliary fuse."

"(4) In an electric safety-fuse, the combination of a main fuse, an auxiliary fuse, overlying and underlying portions of insulating material, an inclosing casing, said casing provided with an opening through its top portion whereby the condition of the auxiliary fuse may be observed."

The object of inclosing the main safety-fuse is to prevent, when the fuse blows, the spattering of the metal of the fuse strip, and to confine the heated and burning metallic vapors and particles of the molten metal. When the main fuse is completely inclosed its condition cannot be easily observed, and this is a substantial objection, as is shown by the fact that inclosed fuses of the prior art were provided either with openings in the inclosing case or with a transparent cover of glass or mica, as well as by the fact that most of the different forms of inclosed fuses developed since the date of the Thalacker patent have some means of external indication to show when the invisible main fuse is blown.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thalacker's specification says:

"Safety-fuses as heretofore constructed have consisted of a strip of fusible metal inserted between the divided ends of an electrical conductor. Such fuses are commonly unprotected by any covering. Hence, when they are 'blown,' the metal of the fuse strip is spattered over the surrounding parts, and it is not unusual for an arc to form between the remaining portions of the strip or the terminals of the conductors to which the strip is attached. Further, fuses so arranged are unreliable, as their fusing point is affected by the surrounding temperature, air currents, etc.

"In other constructions the fusible strips have been inclosed in a suitable tube or box, which arrangement obviated the objections stated, but was not suitable for use, as the condition of the fuse could not easily be observed.

"In order to make a safety-fuse which shall have none of the faults mentioned, I combine with a strip of fusible metal, completely inclosed in a non-conducting box or case, an auxiliary fusible strip so located and connected as to be seen at all times, and which will be destroyed when the main fuse, which is out of sight, is 'blown.'"

The specification states further:

"The operation of my improved fuse is readily understood. When the main fuse is blown, the auxiliary fuse is likewise blown; the main fuse, however, being completely incased within the protecting cover the material of which it is made cannot scatter, nor can an arc be formed, and the action of the fuse is no longer affected by variation in temperature. At the same time the condition of the main fuse will always be indicated by the condition of the auxiliary fuse, as seen through the opening in the casing."

The feature of Thalacker's invention which has been most discussed is the means provided for giving outward indication of the condition of the invisible main fuse. His inclosing box is provided with an opening which discloses, not a portion of the main fuse as in the prior art, but a portion of a small auxiliary fuse, of material which fuses when the main fuse blows, which is so small, and contains so slight an amount of fusible material, that no evil results ensue upon its destruction, though it is partially uncovered. Instead of partially uncovering the main fuse, as in the prior art, he inclosed the main fuse and added an auxiliary fuse that would blow upon the blowing of the main fuse, but which, unlike the main fuse, could be partially uncovered without objectionable results.

I find nothing in the prior art which anticipates this feature. It is true that an inclosed fuse, with means for giving external indication of its condition, is shown in the patents to Van Depoele, Nos. 417,122 and 429,981; but Van Depoele does not do this by an auxiliary fuse so small that it can be partially exposed for direct inspection. Upon the blowing of Van Depoele's fuse it disrupts a fine wire attached to the fuse, and thus releases a pivoted wing held by the wire within the case, so that it drops down through a slot in the case and thus signals that the main fuse is blown. While these patents show that Thalacker was not first to provide an inclosed fuse with an exterior indicator, they contain no suggestion of the use of an auxiliary fuse for indication.

I am of the opinion that the Thalacker patent describes a patentable invention, and that the principal question in the case is as to the breadth of this invention and the proper scope of the claims in suit.

The complainant contends in effect that the use, in connection with an inclosed fuse, of a fuse-wire having the sole function of indicating

the condition of the main fuse, was broadly new in the art, and that because the defendant's fuse has such a wire it infringes the Thalacker patent despite structural differences. While it is quite true, as Prof. Cross, the complainant's expert, says, that the Thalacker structure "comprehends a completely inclosed main fuse combined with an auxiliary fuse of such character and construction as to be fused or destroyed when the main fuse is blown," and that "the auxiliary fuse is so placed and arranged as to give evidence by visual inspection whether or not the main fuse has been destroyed," and while it is quite true that the prior art contains no structure corresponding to this description, I am of the opinion that the question of infringement cannot be determined properly without a more particular consideration of the character of the elements of the Thalacker combination and of the mode in which these elements are combined.

It should be kept in mind that the Thalacker structure is designed not merely for purposes of indication, but primarily for preventing various faults in unprotected fuses, such as the spattering of the metal of the fuse strip, arcking, and unreliability, due to the fact that fusing points are affected by the surrounding temperature, air currents, etc. All this appears clearly in the specification. Indicating means are secondary to the means provided to obviate the defects in unprotected fuses. Thalacker has not made claims for an indicating device designed to be applied to any form of inclosed fuse, but his patent discloses what Prof. Cross describes as "a self-contained unitary structure, capable of standardization and adjustment, apart from the particular installation in which it is employed." Regarded as an article of manufacture and sale, it is primarily a safety-fuse with a protecting cover to obviate spattering, etc., and, secondarily, an indicating fuse.

When we employ the term "inclosed indicating fuse," we cover a great variety of different structures, as may be seen by an examination of the various patents in evidence. Practical identity and patentable identity are not to be determined merely by reference to a broad similarity in that they all have indicating means, but they must also be compared in respect to their structure and to their adaptation to perform the principal functions of a safety-fuse. To illustrate: An impractical main fuse, with impractical devices for protection, does not become a practical and useful article of manufacture though provided with an excellent indicator, and is in no practical sense similar to a practical main fuse with practical devices for protection and an equally excellent indicator. A worthless inclosed main fuse with a good indicator is not the same thing as an excellent main fuse with a good indicator. The difficulty I have found in the arguments is this case is that they are so largely devoted to a comparison of the indicating means, a single feature of the combination, and deal so slightly with the question of the identity of the combinations. The latest case in the Supreme Court relating to this subject which has come to my attention is Leeds & Catlin Co. v. Victor Talking Machine Co. et al. (April 19, 1909) 213 U. S. 301, 29 Sup. Ct. 495, 53 L. Ed. ——, in which it is said:

"A combination is a union of elements, which may be partly old and partly new, or wholly old or wholly new. But whether new or old, the combination is a means—an invention—distinct from them. They, if new, may be inventions, and the proper subjects of patents, or they may be covered by claims in the same patent with the combination.

"But whether put in the same patent with the combination or made the subjects of separate patents, they are not identical with the combination. To become that, they must become united under the same coöperative law. Certainly, one element is not the combination, nor in any proper sense can it be regarded as a substantive part of the invention represented by the combination, and it can make no difference whether the element was always free or becomes free by the expiration of a prior patent, foreign or domestic. In making a combination an inventor has the whole field of mechanics to draw from. This view is in accordance with the principles of the patent laws."

Considering the Thalacker combinations of the claims in suit, we find these elements:

(1) A main safety-fuse.
(2) An auxiliary fuse.
(3) A casing, variously described as follows:

(Claim 1) "Completely enveloping the main fuse, but so constructed as to permit the condition of the auxiliary fuse to be seen."
(Claim 2) "Completely enveloping the main fuse, but only partially enveloping the auxiliary fuse."
(Claim 4) "An inclosing casing, said casing provided with an opening through its top portion whereby the condition of the auxiliary fuse may be observed."

(4) In claim 4 an additional element, "overlying and underlying portions of insulating material."

Thalacker's box or casing, and two thin strips of wood, vulcanite, indurated paper, or like material, one overlying and one underlying the main fuse, are the only means of protection against the faults of an open fuse. The auxiliary fuse and the opening in the box are solely for indication.

The defendant's argument lays considerable stress upon the word "auxiliary," as an indication that Thalacker intended to make a multiple fuse structure, and to support the argument that as multiple fuses were old, and as it was well known that when one strip of a multiple fuse blows the others blow as well, there could be no invention in leaving uncovered one of the strips of an inclosed multiple fuse. I am not impressed with the force of this argument. The patent affords no support to the idea that Thalacker first made a multiple fuse of ordinary type, and then simply uncovered one part to learn the condition of the other. On the contrary, it is quite evident that he made his auxiliary fuse of very small size to avoid spattering, and in order that it might safely be left uncovered when it blew. There can be little doubt that though he took advantage of the multiple fuse principle he did this for the sole purpose of indication, and regardless of the usual considerations which lead to the use of a multiple fuse. His auxiliary fuse by its construction, is well adapted to be exposed and left uncovered, and ill adapted to serve the function of one of the strips of an ordinary multiple fuse.

So far as the patent relates to the main safety-fuse, and to the

means of obviating the ill effects of the blowing of an uncovered fuse, it is doubtful if it discloses anything of patentable novelty or anything that has advanced the art. The Thalacker structure has never been manufactured or used, so far as the record discloses, so that the Thalacker patent has been characterized as a "paper patent." On the other hand, it is quite apparent from the testimony, and the numerous patents in evidence, that, aside from the feature of external indication, the defendant's safety-fuse is the result of a very extended series of experiments and of improvements which are quite independent of Thalacker. The complainant has put in evidence an article in the "Journal of the Franklin Institute" for January, 1903, and a paper presented to the American Institute of Electrical Engineers, March, 1900, both by Mr. Joseph Sachs, the defendant's expert, which show fully that the main problems in excess current protection and in the development of practical safety-fuses were quite independent of the problem of exterior indication of the condition of an inclosed fuse. It is stated that the satisfactory operation of an inclosed fuse depends upon many features: (1) The diameter, size, and form of the fusible strip; (2) length of active fusible strip; (3) the character and mass of the fuse environment; (4) the interior section and length of the inclosing casing—and that to these may be added the necessity for indication, compact size, and facility to manipulate and low cost.

The great practical difference between the defendant's structure and Thalacker's in all respects except that of indication is practically conceded. The question then arises whether the fact that Thalacker was first to use an auxiliary fuse as an indicator for an unimportant and impractical inclosed fuse is sufficient to prevent the use upon entirely different kinds of inclosed fuses of an auxiliary fuse or an auxiliary wire which will produce upon the surface of the inclosed fuse exterior indication. An examination of the defendant's structure emphasizes the injustice of giving so broad a scope to the claims of the patent. The defendant's fuse comprises a main fuse having two strips in multiple. These strips are surrounded by filling material in a loose condition. The casing is a round tube of red fiber, an insulating material; metallic end caps or ferrules fit closely over the open ends of the fiber tube, and act as closures for the open ends of the tube. Inside the fiber tube is a lining of asbestos paper fitting closely to the inside surface of the tube. Arcking or flashing or explosive disturbance is prevented, owing to the fact that, the strips being entirely surrounded by the loose powdered insulating material, the metallic vapors resulting from the melting and disruption of the strips are distributed through the interstices of the finely divided filling material, so that they are cooled and thus lose their explosive pressure and force, and such arc as might exist between the points of rupture in the strips would be broken up by the filling material intervening between these points. This filling is an element of the defendant's combination which has no corresponding element in claims 1 and 2 of the patent in suit. Claim 4 has the element "overlying and underlying portions of insulating material," but these are described in the specifications as "thin strips of wood, vulcanite, indurated paper, or similar material," and do not

perform the above-described functions of the loose powder in defendant's fuse.

The defendant's device is also provided with a shunt-indicating circuit by means of which the blowing of the main fuse is made known by a visible indicator at the surface. Upon the outer surface of the fiber.tube is a cavity which is filled with a paste; in the metallic end cap is a hole which uncovers a portion of the paste in the cavity. This paste is the indicator. It is of very high resistance, and is of such composition that it chars or burns, and shows by its discoloration the condition of the main fuse. The defendant's auxiliary circuit is not like Thalacker's, a simple metallic strip of low resistance, made very attenuated in order to blow without spattering and thus to permit of uncovering for observation. It contains a very fine wire of German silver of high resistance, which does not melt or fuse, but which upon the blowing of the main fuse acts as a shunt. This wire serves to conduct the current to the paste indicator, which is also of high resistance, and of such special composition that it ignites only when by the blowing of the main fuse the high·resistance of the wire is overcome, and sufficient current is forced through the auxiliary circuit to ignite and burn the highly resisting material in the external cavity of the fiber tube. The sleevelike portion of the ferrule or cap forms a part of the high-resistance shunt circuit.

Mr. Sachs testifies:

"The continuation of the electric continuity from the end, 14, of the high-resistance German silver wire, through the very high-resistance ignitable joint, 17, is through the sleevelike portion of the ferrule, connection therewith being made by the paste forming the ignitable joint, and the electrical continuity through the screw, 3, to the anchor piece, 4, to the flat contact blade at that end of the tube."

It is quite clear that the structure of the defendant's auxiliary circuit is not suggested by the Thalacker patent, and that it does not embody Thalacker's idea of providing an auxiliary metallic fuse of such small size that it could ·be safely exposed and left uncovered. It is also quite apparent that the defendant's device, considered both in respect to the means of inclosing the main fuse and of preventing the faults of an open fuse, and in respect·to the means of producing exterior indication, is in no respect a mere copy of Thalacker's device.

The adoption of a high-resistance shunt circuit, which, as complainant suggests, was well known in the prior art (see patent to Wurts, 413,703), in conjunction with the new element, an ignitable paste conductor which gives indication by discoloration, is a wide departure from Thalacker. In judging of the identity of the combinations of Thalacker and of the defendant, we must keep in mind the rule that one element, or indeed all of the elements, are not the combination. "To be that—to be identical with the invention of the combination—they must be united by the same operative law." Leeds & Catlin Co. v. Victor Talking Machine Co. et al. (U. S. Sup. Ct., April 19, 1909). Thalacker's auxiliary fuse was constructed on the multiple principle, and was designed to be uncovered, just as the main fuses of the prior art had been uncovered. His case, with its opening, was practically that of the prior art, both as to the protection of the main fuse and

to the observation of the interior. The defendant's auxiliary fuse was constructed upon the old shunt principle, and the adoption of this principle led to the adoption of the ignitable exterior indicator. As we have already shown, the means of preventing spattering and arcking, etc., are substantially different from Thalacker's.

Upon the whole case, I am of the opinion that neither upon the terms of the patent nor upon a consideration of Thalacker's contribution to the art, is he entitled to cover broadly the combination of a main fuse with any kind of inclosing means and any kind of an auxiliary indicating circuit. The claims are for specific combinations whose principal function is protection against excess current—indicating means being secondary and subordinate.

While the question seems to me somewhat novel, and is perhaps not free from doubt, I am inclined to the view that, though under some circumstances a combination designed to perform two distinct functions might be infringed by using the combination for either function, this is not the case where one function is clearly subordinate to the other. The secondary function, being merely of indication or signaling upon the performance of the main function, can hardly serve as a proper test of the substantial identity of two structures or combinations which were designed primarily for protection against excess current in the main circuit. I am satisfied by the testimony that in respect to the main fuse and the protection against the results of its blowing the defendant borrows nothing from Thalacker, and in this respect does not infringe. As to the use of an auxiliary circuit for purposes of indication, I am of the opinion that the mere fact that Thalacker was first to use in an inclosed safety-fuse an auxiliary circuit to indicate the condition of a main fuse does not entitle him to a monopoly of auxiliary circuits for indication of the condition of inclosed fuses, but only to cover such means for the application of this idea as are substantially similar to those shown in his patent.

One of the principal uses of the electric current is to give signals by actuating signaling devices, either visible or audible. Auxiliary circuits for signaling purposes had been previously used in connection with uninclosed safety-fuses; thus a lamp and a bell had been put into a shunt circuit to give an alarm upon the blowing of a fuse. In the patent to Mordey, No. 622,511, 1899, is shown a device previously described in the Electrician of February 3, 1893. Claim 7 is for:

"The combination, with an ordinary fuse or cut-out adapted to carrying practically the whole of the current in the circuit with which it is to be used, of an additional fuse arranged as a shunt to the ordinary fuse, and comprising a fusible conductor, and a vessel or tube charged with finely divided nonconducting material, traversed by said fusible conductor, substantially as described."

This additional fuse in the shunt circuit is described as having a small portion left uncovered and visible to enable its condition to be observed.

It thus appears that in the prior art an inclosed main fuse had been provided with an external indicator, operated by the main fuse, and that uninclosed main fuses had been provided with auxiliary circuits to which were attached indicating means, to signal the condition of the

main fuse. Thalacker, therefore, was not first to provide an auxiliary circuit for indicating the condition of a main fuse, though apparently he was first to apply it for the purpose of indicating the condition of an inclosed main fuse.

It is, of course, more necessary that an inclosed fuse should be provided with indicating means than that an uninclosed fuse should be so provided; but since the prior art has shown the use of an auxiliary circuit for the purpose of indicating the condition of the main fuse, it would seem to be open to all inventors to devise means for suitably inclosing in a unitary structure not only a main fuse, but the auxiliary indicating fuse as well. In other words, the combination of an open main fuse and auxiliary indicating circuit being old, it was open to inventors other than Thalacker to devise means for suitably inclosing this combination. Thus, if a box should be placed over the unprotected fuse wire of the Mordey patent, we should have the combination of inclosed fuse and exterior indication by an auxiliary circuit; but this would not, in my opinion, be the Thalacker invention, though it would be within the broad interpretation which complainants put upon the Thalacker claims.

It is not the rule of the patent law that he who first applies one of the fundamental mechanical or electrical devices to a particular art thereby becomes entitled to a monopoly of that device for that art, regardless of the particular mode or means of its application. Felt & Tarrant Mfg. Co. v. Mechanical Accounting Co. (C. C.) 129 Fed. 386. Limiting the claims of the Thalacker patent to a scope commensurate with his specification, and regarding the inventions claimed as unitary structures designed for practical use as safety-fuses, I am of the opinion that, though the patent is valid, the defendant has borrowed nothing from Thalacker, and that the defendant's safety-fuses are distinct combinations both in respect to fuse protection and to exterior indication of the condition of the main fuse, and are not infringements.

The bill will be dismissed.